*New-Haven,*
July, 1851.

The State
*v.*
Wolcott.

The STATE *against* WOLCOTT and another.

The ninth section of the BILL OF RIGHTS in the constitution of this state, is not applicable to an enquiry before a grand-jury; nor is it essential to the validity of an indictment, that the accused should be present at such enquiry, or that notice should be given him for that purpose.

Therefore, where the accused, during the enquiry by the grand-jury, which resulted in an indictment against him, was confined in the state's prison, had no notice of the proceedings against him, and no opportunity to be present, and was not present; it was held, that the indictment was not thereby invalidated.

It is not usual for the court, without special reasons, suggested, on application, to give directions regarding witnesses to be called before the grand-jury.

Therefore, where *D,* an accomplice in the crime charged, went before the grand-jury, and testified, as a witness, without the direction or permission of the court; it was held, that the indictment was not thereby invalidated.

If the accused plead *Not guilty,* and proceed to trial, without suggesting such objections, they will be considered as *waived* by him.

Where *D,* an accomplice, having testified, on the trial before the petit jury, witnesses were called to prove circumstances tending to corroborate the testimony of *D ;* it was held, that the evidence of such witnesses was admissible.

An accomplice is a competent witness to prove the crime charged, before the grand-jury, or the petit jury.

The testimony of an accomplice, without corroboration, the law considers as credible, in some degree, and may be sufficiently so to produce conviction; which is a matter exclusively for the jury to determine.

THIS was an indictment for burning a dwelling-house, whereby the lives of persons were endangered. *John W. Wolcott* was indicted as principal in the offence, and *Elisha W. Wolcott* as an accessory, aiding in the commission thereof.

The accused pleaded, severally, *Not guilty;* and the cause was tried, at *New-Haven, October* term, 1850. After a full hearing, it was committed to the jury, who found them, severally, *guilty.*

The accused thereupon moved in arrest of judgment, on two grounds : 1. That when the bill of indictment under which they were tried, was before the grand-jury for their consideration, and witnesses were examined with reference to the truth of the allegations therein contained, the accused were confined in *Connecticut* state prison; which was well

known to the state's attorney, who drew up and furnished to the grand-jury, the bill of indictment; and the accused, at the time of such inquest, were wholly ignorant thereof, and had no notice of the time and place of the meetings of the grand-jury, and no opportunity to be present and cross-examine the witnesses summoned to testify against them. 2. That during the examination, by the grand-jury, *William A. Dickerman* went before them, and testified, as a witness, without the permission of the court having been obtained therefor, though he was an accomplice in the crime charged in the indictment.

On the trial of the cause to the jury, it was proved and admitted, that at about the hour of 12 o'clock, on the night of *January* 8th, 1850, the dwelling-house of *William H. Ellis*, in which he and his wife were then sleeping, was feloniously set on fire; and to prove that the prisoners committed the crime, as charged against them in the bill of indictment, the attorney for the state called as a witness *William A. Dickerman*, who testified, that, in various conversations had by the prisoners and witness, during a period of two or three weeks previous to the fire, it was arranged and agreed, that said dwelling-house should be set on fire, in consequence of a prosecution against *Elisha M. Wolcott*, which, it was supposed, *Ellis* had been instrumental in causing to be made; and that to prevent *Elisha* from being suspected of the crime, as he was known to *Ellis*, it was arranged, that he should go to *Hartford*, and be there, at the time when the house was set on fire. He further testified, that on the *Saturday* evening previous to the fire, the prisoners and the witness were at *Onthank's* store, and, in a conversation with *Amos Thomas*, they were informed by him, that the hose of the fire-engine, in that part of the town, had been sent to *Boston* to be repaired. It was in consequence agreed, that the house should be set on fire, before the hose was returned, that the fire might not be extinguished. That in pursuance of the arrangement, *Elisha* went to *Hartford;* and *John W. Wolcott*, with the assistance of the witness, set fire to the house, by boring an auger hole through the clapboards, and inserting therein some rags saturated with oil and spirits of turpentine, and then setting fire to the rags. That on the *Friday* after the fire, *Elisha*

returned from *Hartford*, and in conversation with the witness and the other prisoner, expressed his satisfaction with what had been done, and said to them, that he would go to *Ellis*, and ask him to assist the prisoner in the purchase of some blacksmith's tools, adding that *Ellis* would not suspect him, if he came to him for assistance. That he accordingly went to *Ellis*, and came back, saying that the old devil did not then even suspect them; and detailed to them the conversation which he had with *Ellis*, and how he had deceived him.

The attorney for the state next called *Rachel Dickerman*, the wife of the former witness, who testified to various conversations which she had heard at her husband's house, between the prisoners and her husband, when they were all together, repeating the mode and manner of firing the dwelling-house, before it was burnt, and the arrangement that *Elisha* should be absent, when the building was set on fire. That on the night of the fire, *John* asked her for some rags, and she told him where he could get them; that he then asked her for some spirits of turpentine, and she went to the closet, and got a bottle, and handed it to him. That he then dipped the rags in oil and spirits of turpentine, which, as her husband testified, were the same used in setting fire to the dwelling-house. She also testified to the conversation of *Elisha*, after the fire, his going to see *Ellis*, and what he said after his return, as testified to, by her husband.

It appeared, that at the time of the fire, and for some months previous thereto, *John* was a boarder at her husband's house; and it did not appear, that she was, in any manner, connected with the commission of the crime, farther than to hear the conversation of the prisoner and her husband at her house, while engaged in her domestic concerns, and to inform *John*, where he could get some rags, and to give him the spirits of turpentine. She also testified, that when *John* asked for the rags and the turpentine, she inquired of him what he was going to do with them; and he told her, it was none of her business, but would tell her, when he came back.

The attorney for the state then called *Ellis*, as a witness, to prove the conversation with *Elisha*, when he called upon

New-Haven,
July, 1851.

The State
v.
Wolcott.

him to assist *Elisha* in the purchase of tools, for the purpose of shewing, that *Elisha* did have the conversation with the witness, which had been detailed in the testimony of *Dickerman*, and also for the purpose of shewing the answer and conduct of the prisoner, when the witness told the prisoner that he was suspected of having set fire to his house. To the admission of this testimony the prisoner's counsel objected; but the objection was overruled and the testimony received.

The attorney then offered *Thomas*, as a witness, to prove that the conversation between him and the prisoners and *Dickerman*, respecting the hose of the engine, was as stated by *Dickerman*. To this testimony, the prisoner's counsel objected; but the testimony was also admitted.

Other evidence was introduced, tending to confirm the testimony of *Dickerman* and his wife.

The counsel for the prisoners claimed, that the jury ought not to convict the prisoners upon the testimony of *Dickerman*, unless they should find his testimony corroborated, in material points, by other evidence, legally sufficient for that purpose. That the testimony of *Dickerman's* wife was not legally sufficient for that purpose. That if, upon the evidence, the jury should find, that she was an accomplice with her husband in the commission of the crime, for that reason her testimony was not legally sufficient to corroborate the testimony of her husband, and that the jury ought not to consider it sufficient for that purpose; and that, if they found the testimony of *Dickerman* against *John W. Wolcott*, legally corroborated by other testimony, but his testimony against *Elisha M. Wolcott*, not confirmed by other testimony, it would be their duty, while convicting *John*, to acquit *Elisha*; and prayed the court so to instruct the jury.

The court, upon this part of the case, instructed the jury as follows: "Much has been said in relation to the testimony of accomplices, and the degree of credit to be given to it. There are certain principles connected with this subject, that are obvious to every mind. In order to enable you to find a verdict against the prisoners, it is necessary that the public prosecutor produce before you evidence, sufficient to satisfy your minds, beyond any reasonable doubt, that they are guilty of the offence charged against them. An accomplice

*New-Haven,*
*July,* 1851.
———————
The State
*v.*
Wolcott.

is an admissible witness; but as he comes before the court under suspicious circumstances, his testimony ought to be received with great caution.  As a general rule, it will be unsafe to convict upon the testimony of an accomplice alone, uncorroborated by other testimony.  It ought to be corroborated in material facts, connecting the prisoners, and each of them, with the crime.  But the degree of credit to be given to the testimony of an accomplice, and the amount of corroboration necessary to render it satisfactory, are matters to be considered and determined by the jury.  Much will depend upon his manner of testifying; the manner of answering the interrogatories put to him, and the consistency of his story with facts proved by other witnesses.  The attorney for the state relies mainly upon the testimony of *Dickerman* and his wife, with other evidence, in corroboration.  She stands before you as the wife of an accomplice.  How far her testimony may be biased, by a desire to have her husband liberated, it is for you to say."

After the verdict, the defendants moved for a new trial.

The questions of law arising upon the motion in arrest of judgment, and upon the motion for a new trial, were reserved for the advice of this court.

*Ives* and *Harrison,* in support of the motion in arrest, contended, 1. That in all criminal prosecutions, our constitution and laws had anxiously secured to the accused the means of defence.  First, the accused has " a right to be heard, by himself and by counsel."  This involves a right to be *present in court*—present on the watch—present, soon enough to do the *first* necessary act of self-defence—present throughout all successive stages of the " *prosecution.*"  *Stat.* 28. § 9.  *Sperry's* case, 9 *Leigh,* 623.  2 *Ala. R.* 102.  6 *Penn.* 384.  Secondly, the first necessary act of self-defence may be a challenge to the array or to the polls of the grand-jury : the grand-jury being not merely accusers, but *triers,* and their proceedings constituting an important stage of the "prosecution."  *Davis's Prec.* 24, 25. 82. 83. and authorities cited.  *Juryman's Guide,* 24. 25. 82. 83.  1 *Chitt. Cr. L.* 309. and notes.  (*Am.* ed. of 1847.)  *Wharton's Am. Cr. L.* 120. 121.  3 *Wend.* 314.  1 *Burr's Tri.* 33. 37. 38. 39. 41. 43.  1 *Sw. Dig.* 737.  4 *Bla. Com.* 303.  1 *Chitt.*

Cr. L. 318. *Wharton's Am. Cr. L.* 125. *Davis's Prec.* 24.
25. *State* v. *Fassett,* 16 *Conn. R.* 473. Thirdly, it is there-
fore, a sound rule, that the grand-jury cannot be "legally
impannelled and sworn" until "the accused"—present in
court—is allowed an opportunity to challenge the grand-
jury, and "to be heard" upon his challenges. *Stat.* 257.
Fourthly, "the accused" has a right to be confronted, by
the *witnesses* against him—*i. e., all* the witnesses : and this
right cannot be reduced to a practical certainty, unless "the
accused" is permitted to confront, not only "the witnesses
against him" before the petit jury, but those, (possibly a
totally different set,) who testify "against him" before the
grand-jury. The law of *Connecticut* admits this right, to
the full extent here claimed. *Stat.* 28. *Wharton's Cr. L.*
114. to 119. and long note. 2 *Sw. Syst.* 379. *Lung's* case,
1 *Conn. R.* 428. 2 *Sw. Dig.* 371. 16 *Conn. R.* 457. *State*
v. *Spencer, Sup. Ct. Hart. Co. Jan. T.* 1850. Fifthly, it is,
therefore, a sound rule, that a "bill of indictment" cannot
be legally "found" by a grand-jury, on testimony taken in
the absence of the prisoner. *Stat.* 257. Sixthly, the pres-
ent case does not fall within any *exceptions* to these rules.
The state had the *power* to bring the prisoners into court
soon enough for them to exercise their aforesaid rights.
With that power the duty to *exert* it was inseparably con-
nected. The prisoners did not waive their right to have it
so exerted. 3 *Bla. Com.* 129, 130. 4 *Bla. Com.* 290. and
note 4. *Davis's Prec.* 25. *In re Cook,* 7 *Ad. & Ellis, N.*
*S.* 653. (53 *E. C. L.* 653.) Bail of *Peter Vergen,* 2 *Stra.*
1217. *Clark* v. *Smith,* 3 *Man. Gran. & Scott,* 982. (54 *E.*
*C. L.* 982.) *State* v. *Spencer,* before cited.

2. That *Dickerman,* an accomplice, should not have been
sent before the grand-jury, without permission of the court
first had. *Rosc. Cr. Ev.* 122. 1 *Phil. Ev.* 39. 2 *Phil.*
*Ev.* 68.

3. That the grounds above stated are a sufficient foundation
for a motion in arrest. 2 *Sw. Dig.* 415. 1 *Chitt. Cr. L.*
300. Argument of state's attorney, 16 *Conn. R.* 462.

4. That on the motion for a new trial, the testimony of
*Ellis* and of *Thomas,* particularly that of *Thomas*—was in-
admissible ; being irrelevant and calculated to prejudice the
prisoners, by giving to the accomplice, in the minds of the

jury, a false and delusive credit. *Commonwealth* v. *Bosworth*, 22 *Pick*. 399.

5. That the charge of the court was erroneous. 2 *Russell*, 962. 963. 964. 965. 967. 1 *Greenl. Ev.* § 380. 381. and notes. 1 *Russell*, 18, 19. 23. *Rex* v. *Wilkes* & al. 7 *Car. & Pa.* 272. (32 *E. C. L.* 507.) *Rex* v. *Neal* & al. 7 *Car. & Pa.* 168. (32 *E. C. L.* 481.) *Rex* v. *Addis*, 6 *Car. & P.* 388. (25 *E. C. L.* 452.) *Rex* v. *Wells* & al. 1 *Mood. & Mal.* 326. (22 *E. C. L.* 325.) *Commonwealth* v. *Bosworth*, 22 *Pick*. 399. 1 *Sw. Dig.* 30. 1 *Greenl. Ev.* § 380. Instead of intimating to the jury, that " as a *general* rule, it will be *unsafe* to convict" upon the uncorroborated testimony of an accomplice, the court should have authoritatively advised the jury, that as a *universal* rule, it would be *wrong* for them so to convict. The court should not have entirely withdrawn from the jury the question whether or not *Dickerman's* wife was his accomplice. The jury should have been told, that the *wife* of the accomplice could not be legally capable of corroborating him; especially, if they should find her to be an accomplice.

*C. A. Ingersoll*, (state's attorney,) contra, contended, 1. That it is not necessary that the accused should be before the grand-jury, to make the indictment good. 2 *Sw. Dig.* 370, 1.

2. That *Dickerman* was a proper witness to go before the grand-jury.

3. That if there was any validity in the objections, at any time, the accused *waived* them, by going to trial. *Selleck* v. *Sugar Hollow Turnpike Co.* 13 *Conn. R.* 453. *Woodruff* v. *Richardson*, 20 *Conn. R.* 238. *Regina* v. *Sullivan* & al. 8 *Ad. & Ellis*, 831. (35 *E. C. L.* 529.) *Orrok* v. *Commonwealth Ins. Co.* 21 *Pick*. 457. By pleading the general issue, they admitted that the indictment was properly found. *Smith* v. *The State*, 19 *Conn. R.* 493. 1 *Chitt. Cr. Law*, 364. [447.]

4. That the testimony of *Thomas* and *Ellis* was properly admitted. It went to shew that *Dickerman* had told the truth.

5. That there was nothing exceptionable in the charge. In the first place, the testimony of an accomplice is, of itself, sufficient to found upon it a verdict of guilty. 1 *Greenl*.

*Ev.* § 380. *The People* v. *Costello*, 1 *Denio*, 83. *Common-wealth* v. *Bosworth*, 22 *Pick.* 397. *United States* v. *Lancaster*, 2 *McLean*, 431. 445. 3 *McLean*, 224. But secondly, if any corroboration was necessary, such corroboration was had, by the testimony of the wife, and by other evidence. Thirdly, Mrs. *Dickerman* was not an accomplice : she had done nothing criminal.

*New-Haven*, July, 1851.

The State *v.* Wolcott.

CHURCH, Ch. J. Under the motion in arrest of judgment, in this case, the claim of the prisoners is,

First, that while the indictment on which they have been found guilty, was under investigation, by the grand-jury, they were confined in the state's prison, had no notice of the proceedings against them, and no opportunity to be present, to confront or examine witnesses produced against them.

The practice in this state, so far as we are informed, from the earliest times, has been, if the accused be in custody of the court, for the grand-jury to cause him to be brought before them, at the hearing, and perhaps also, if he is out on bail and desires to be present ; but this is done without any other order or interference of the court than is expressed by the court to the grand-jury in the charge. We have not known the practice to be extended further.

It is claimed now, that every one accused of crime of which a grand-jury takes cognizance, has a constitutional right to be present with the grand-jury, during their investigation. The bill of rights in our constitution declares, that " in all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, and to have compulsory process to obtain witnesses in his favour," &c. *Stat.* 28. § 9. This provision has never been understood to apply to grand-jury enquiries: on the contrary, the rule in *Connecticut*, so far back at least as the time of *Peter Lung's* case, in 1815, has been in conflict with this claim of the prisoners. Then this court adopted and published a rule, in the form of a charge to the grand-jury, by which counsel were not permitted to be present before them, nor any witnesses on the part of the accused ; and this has been followed ever since ; shewing conclusively, that the privilege thus conferred by the con-

stitution, has been considered as extending only to trials before petit juries.   Nor have we any statute conferring the right now claimed.

Grand-juries have a right to investigate offences, and present bills of indictment against persons at large, as well as those in custody or on bail.   They have a right to originate charges against offenders, without fore-warning them of their proceedings against them.

A different practice may have been followed in *England*, and in our sister states.   Ours has been effective to secure the rights of our citizens, and has been so long pursued as a safe one, as to forbid courts to *change the law*, without legislative sanction.

A second objection, under the motion in arrest, is, that *William A. Dickerman*, who was an accomplice of the prisoners, was admitted, without permission of the court, to testify against them before the grand-jury.   We do not understand by this, that he went before the grand-jury, in violation of any order, or usual practice of the court.   It is not usual for the court, without special reasons, suggested on application, to give directions regarding witnesses to be called before the grand-jury.   The prosecuting attorneys send such as they believe to be necessary.   And whether the witness, in such case, be an accomplice or not, can make no difference.   Accomplices are competent and admissible witnesses ; and especially, since our present law, which has abolished both interest and infamy, as tests of competency.   This objection was made in Dr. *Dodd's* case, but was unavailing.   1 *Leach's Cr. Cas.* 185.   1 *Chitt. Crim. Law,* 319.   Grand-juries do not *try,* but *enquire ;* they do not *condemn,* but only *accuse ;* and it would be found intolerable, in practice, to confine them to technical rules of evidence.

Besides, we think these objections came too late.   The grounds of them should be treated as *waived,* by the general plea of *not guilty,* and proceeding to trial, without a suggestion of them by the accused.

Under the motion for a new trial, the first claim is, that the testimony of *Thomas* and of *Ellis* should have been rejected.   *Dickerman* had testified, that, a little while before the fire, he and the prisoners, at a certain place, had been informed by *Thomas,* that the hose of the fire engine was at

*Boston,* to be repaired; and that this was the reason why the fire was set, at the time it was. *Thomas* was called to confirm *Dickerman,* as to the time and subject of this conversation. It shewed a privity and connexion, and a conspiracy, between *Dickerman* and the prisoners, and a reasonable motive for the commission of the deed, at a time when it would prove effective; that *they knew* the engine could not then be worked effectively, to extinguish the fire; and that their information was derived from this source.

So, as to the testimony of *Ellis.* It proved, that *Dickerman* had knowledge of a fact connecting these prisoners with *Ellis,* which he could have derived only from them; that he, *Dickerman,* was their confidant, to whom they imparted their plans and their movements, as he had testified; and which, in part, at least, were shewn to be true, by the testimony of *Ellis;* and thus, in a degree, it corroborated *Dickerman,* as to what he had sworn of the fact, that *Elisha M. Wolcott* was at *Hartford,* at the time of the fire, and the *reason of it.* Besides, the conversation between *Ellis* and *Elisha,* was proper to be proved, to show his conduct and his answers, when conversing on the subject of the fire, and the persons suspected.

The testimony of Mrs. *Dickerman* was very direct and positive, not only as corroborative of her husband's testimony, but as charging the prisoners from their own acts and conversations. That her husband was an accomplice, or even that she was an accomplice herself, would not disqualify her from testifying; and the credibility of her story was for the jury to consider.

It was important to shew a combination or conspiracy between *Dickerman* and the *Wolcotts;* and to do this, as in other cases, it is frequently necessary to resort to circumstances in themselves of apparently little consequence, which, when brought together, are very satisfactory for this purpose.

Another ground for a new trial is, that the judge refused to instruct the jury, that the testimony of *Thomas* and *Ellis* and of Mrs. *Dickerman* was not legally sufficient to corroborate *Dickerman,* the accomplice; and without corroboration, there could be no conviction of the principals. The testimony of an accomplice is admissible, and of course, to

*New-Haven,*
*July, 1851.*

The State
*v.*
Wolcott.

some extent, is presumed to be credible. The law would not admit proof, which it had decided, *a priori*, should not be believed, when admitted. If credible at all, it may be sufficiently so, to produce belief and conviction ; and this is not unfrequently true in fact. The degree of credit which is due to an accomplice, is a matter exclusively for the jury to say. *Rosc. Crim. Ev.* 120. 1 *Greenl. Ev.* 380. *Commonwealth* v. *Bosworth,* 22 *Pick.* 397. Courts frequently do and ought to advise caution in reposing confidence in the naked testimony of an accomplice ; but this is rather in the exercise of a proper judicial discretion, than because the law demands it.

What will amount to a corroboration, has been a matter of some discussion in the books. Any evidence, aside from the testimony of the accomplice himself or connected with it, which proves reasonably, not merely that the crime charged has been committed, but that the accused participated in it, may satisfy the mind. And frequently facts of no great prominence will be sufficient to do this.

In the present case, the judge went very fully and fairly into this subject with the jury ; and it is difficult to say, what more favourable charge for the accused could have been given, unless the judge had taken upon himself to say, that *Dickerman* was in no respect corroborated.

We think that neither the motion in arrest of judgment, nor the motion for a new trial, should prevail ; and both are denied.

In this opinion the other Judges concurred.

Motion in arrest overruled;
—— for a new trial, denied.