******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ANTHONY JOHNSON
## (AC 37859)

Keller, Prescott and Kahn, Js.*

### *Syllabus*

Convicted, after a jury trial, of the crimes of robbery in the second degree and conspiracy to commit robbery in the second degree in connection with his alleged conduct in robbing a store with D, the defendant appealed to this court. At the defendant's trial, D, who already had pleaded guilty to criminal charges related to the robbery, testified about details of the robbery, including that the defendant had been the other participant. The state also called as a witness M, who previously had provided the police with a signed, written statement indicating that he had seen another person, K, give the car involved in the robbery to D, the defendant and another individual, but who testified at trial that he did not actually see K give the car to D. The state then sought to admit into evidence M's statement to the police as a prior inconsistent statement pursuant to *State* v. *Whelan* (200 Conn. 743). The trial court admitted a redacted version of the statement for substantive purposes under *Whelan*. Following his conviction, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his claim that there was insufficient evidence to sustain his conviction because it was based on uncorroborated accomplice testimony; our Supreme Court has long held that accomplice testimony does not require corroboration to sustain a conviction, and as an intermediate court of appeal, this court was bound by and unable to overrule that controlling Supreme Court precedent.

2. The defendant could not prevail under the plain error doctrine on his unpreserved claim that the trial court improperly failed to provide an adequate cautionary instruction to the jury regarding the dangers of relying on uncorroborated accomplice testimony; there was no patent and obvious error that required reversal under that doctrine, as the law does not require that an accomplice's testimony be corroborated for the jury to accept it or that the trial court instruct the jury that it is unsafe to rely on uncorroborated accomplice testimony, and the trial court provided the jury with a specific instruction regarding accomplice testimony that cautioned the jury to consider an accomplice's character and interests when weighing his testimony and to look at the testimony with particular care and careful scrutiny, and it also generally instructed the jury to weigh a witness' testimony in light of his interest in the case and all the other evidence.

3. The trial court did not abuse its discretion in admitting into evidence M's statement to the police, that statement having satisfied the personal knowledge requirement under *Whelan*; the statement itself demonstrated that M had personal knowledge of the facts that it contained, as it stated that M saw K give the car to D, the defendant and another individual, M signed the statement, thereby attesting to its truth and acknowledging that he understood that he could be subject to criminal penalties for making a false statement, and although the court allowed only a redacted version of the statement to be introduced into evidence, when determining whether it satisfied *Whelan*'s requirements, the court had the full statement before it, which included details that further demonstrated that M had possessed the requisite personal knowledge.

Argued September 8—officially released December 12, 2017

### *Procedural History*

Substitute information charging the defendant with the crimes of robbery in the second degree, conspiracy to commit robbery in the second degree, larceny in the fourth degree and conspiracy to commit larceny in the fourth degree, brought to the Superior Court in the judicial district of Hartford, geographical area number

twelve, and tried to the jury before *Noble, J.*; verdict of guilty; thereafter, the court vacated the verdict as to the charges of larceny in the fourth degree and conspiracy to commit larceny in the fourth degree; judgment of guilty of robbery in the second degree and conspiracy to commit robbery in the second degree, from which the defendant appealed to this court. *Affirmed.*

*Emily Wagner*, assistant public defender, for the appellant (defendant).

*Jennifer F. Miller*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Erika L. Brookman*, assistant state's attorney, for the appellee (state).

*Opinion*

KAHN, J. The defendant, Anthony Johnson, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the second degree in violation of General Statutes § 53a-135 (a) (1) (B), and conspiracy to commit robbery in the second degree in violation of General Statutes §§ 53a-48 and 53a-135.[1] On appeal, the defendant claims that the jury found him guilty on the basis of uncorroborated accomplice testimony, which, as a matter of law, is insufficient evidence to sustain a conviction. In making this argument, the defendant acknowledges that Supreme Court precedent must be overturned for him to be able to prevail on this claim. The defendant also claims that the trial court improperly failed to caution the jury regarding the dangers of uncorroborated accomplice testimony and improperly admitted a witness' prior inconsistent statement. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. On May 29, 2013, the defendant and Sedwick Daniels robbed a CVS store in Glastonbury. The store manager, Thang Trang, was in his office counting cash and monitoring the store's surveillance cameras, while another CVS employee, Roberto Orellana, was at the cash register. No other employees were working. The defendant and Daniels arrived between 6 p.m. and 9 p.m. When Trang saw the two men enter the store on the surveillance footage, he left his office to offer them assistance. When the defendant and Daniels declined, Trang returned to his office and continued to count the store's cash and to monitor the cameras. The defendant and Daniels began placing merchandise in laundry bags that they had brought with them. Daniels went behind the counter and began to place cartons of cigarettes into his bag. Meanwhile, the defendant approached Orellana and demanded that he open the register. Trang ran from his office to intervene. The defendant put his hand in his pocket as if he had a gun and threatened Trang. After taking money from the register, the defendant and Daniels left the store. As they drove away, Trang went outside and wrote down the car's license plate number. Orellana called 911, and Glastonbury police arrived to take Trang and Orellana's verbal and written statements, and the license plate number.

The responding officer "radioed [the license plate number] into dispatch who put it out over the hotline." The car was traced to an incident from earlier that same day. The car had run out of gas on the highway, and State Trooper Erin Lowney responded. Glastonbury police later showed CVS' surveillance footage of the robbery to Lowney. Lowney could not make a positive identification, but told the Glastonbury police that although "one of the body types didn't look similar to anyone in the car . . . one of the body types" looked

similar to Daniels. Daniels and his cousin, Kenneth Millege, were the occupants of the car Lowney had encountered.

On May 30, 2013, the day following the CVS robbery, Farmington police stopped the same car in response to a shoplifting incident at Westfarms Mall. Glastonbury police arrived at the scene and interviewed two of the car's occupants, Millege and Kirk McDowell. McDowell told the police that the previous day he had seen Millege give the car to Daniels, the defendant, and a third individual. Subsequently, Glastonbury police arrested Daniels. Upon arrest, Daniels told the police that the defendant had been the other participant in the CVS robbery.

The police subsequently arrested the defendant and charged him for his involvement in the CVS robbery. At trial, Daniels, who had already pleaded guilty to charges stemming from this incident, testified about the robbery, again identifying the defendant as the other participant. The jury found the defendant guilty. On February 13, 2015, the defendant was sentenced to a total effective sentence of eight years of incarceration followed by two years of special parole. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that he was convicted on the basis of uncorroborated accomplice testimony which, as a matter of law, is insufficient evidence to sustain the conviction.[2] The state argues that this court is bound by the Supreme Court's decision in *State* v. *Stebbins*, 29 Conn. 463 (1861), and its progeny, which do not require corroboration for accomplice testimony.[3] We agree with the state.

Our Supreme Court has long held that accomplice testimony does not require corroboration to sustain a conviction. See *State* v. *Stebbins*, supra, 29 Conn. 473 (accomplice testimony "if standing alone, is not to be rejected, and whether corroborated or not . . . may be sufficient to satisfy the minds of the jury"); see also *State* v. *LaFountain*, 140 Conn. 613, 620–21, 103 A.2d 138 (1954) ("within power of jury . . . to convict accused upon the uncorroborated testimony of his accomplices"); *State* v. *Williamson*, 42 Conn. 261, 263 (1875) ("testimony of an accomplice, though altogether uncorroborated, [is] evidence to go to a jury, and . . . conviction on such testimony [is] legal"); *State* v. *Wolcott*, 21 Conn. 272, 281–82 (1851) (uncorroborated accomplice testimony sufficient for jury to convict accused). "As an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court. . . . As our Supreme Court has stated: [O]nce this court has finally determined an issue, for a lower court to reanalyze and

revisit that issue is an improper and fruitless endeavor." (Citation omitted; internal quotation marks omitted.) *State* v. *LaFleur*, 156 Conn. App. 289, 302–303, 113 A.3d 472 (2015). Thus, we decline to overturn *Stebbins* and its progeny.

## II

The defendant next claims that the court improperly failed to give a specific cautionary instruction to the jury regarding the dangers of relying on uncorroborated accomplice testimony. The parties agree that this claim of instructional error is unpreserved and may be subject to the implied waiver announced in *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). The defendant nevertheless seeks to prevail on this claim pursuant to the plain error doctrine, as set forth by Practice Book § 60-5. See *State* v. *McClain*, 324 Conn. 802, 808, 155 A.3d 209 (2017) ("*Kitchens* waiver does not preclude appellate relief under the plain error doctrine"). The state argues that the court did not commit plain error.[4] We agree with the state.

When a party does not preserve a claim, the rules of practice allow this court to review the trial court's decision for plain error. Practice Book § 60-5. "An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. . . . [Our Supreme Court] described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 812. The defendant bears the burden of meeting this two-prong test. See *State* v. *Moore*, 293 Conn. 781, 824, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010).

The following additional facts and procedural history are necessary to our resolution of this issue. At trial,

Daniels testified that he and the defendant had participated in the May 29, 2013 robbery together. Daniels explained that he had returned to Hartford from shoplifting in New London and was approached by the defendant about robbing a CVS store that night. Daniels described how he and the defendant stole merchandise from the store, and he identified himself and the defendant in a series of CVS' surveillance photographs. On both direct examination and cross-examination, Daniels answered questions about his prior convictions and about the agreement he had made with the state to receive a reduced sentence in exchange for his testimony. During closing arguments, however, only the state drew attention to the issue of whether Daniels' testimony was corroborated.[5]

The court instructed the jury that it should "decide which testimony to believe and which testimony not to believe" and that it could "believe all, none or any part of any witness' testimony." The court listed a number of factors for the jury to consider, including whether "the witness [had] an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in this case," "how reasonable was the witness' testimony when considered in light of all the evidence in the case," and whether "the witness' testimony [was] contradicted by what that witness has said or done at another time, or by the testimony of other witnesses or by other evidence." The court then provided the jury with a specific accomplice testimony instruction, highlighting that "[i]n weighing the testimony of an accomplice who is a self-confessed criminal, you should consider that fact. It may be that you would not believe a person who has committed a crime as readily as you would believe a person of good character. In weighing the testimony of an accomplice who has not yet been sentenced, you should keep in mind that he may in his own mind be looking for some favorable treatment in the sentence of his own case. Therefore, he may have such an interest in the outcome of this case that his testimony may have been colored by that fact. Therefore, you must look with particular [care] at the testimony of an accomplice and scrutinize it very carefully before you accept it."

The court's instructions continued as follows: "There are many offenses that are of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime. It is for you to decide what credibility you will give to a witness who has admitted his involvement and criminal wrongdoing, whether you will believe or disbelieve the testimony of a person who by his own admission has committed or contributed to the crime charged by the state here. Like all other questions of credibility, this is a question you must decide based on all the evidence presented to you."

The defendant argues that the accomplice instruction the court provided to the jury did not adequately warn the jury of the dangers of relying on uncorroborated accomplice testimony. We disagree.

The law does not require "the judge, whenever an accomplice testifies, to instruct the jury that it is not safe to convict on his testimony alone. . . . It is the character and interest of the witness, as shown upon the trial, and not the mere fact of his being an accomplice, that must determine the discretion of the judge in commenting on his credibility. The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the judge to specially caution the jury . . . ." *State* v. *Carey*, 76 Conn. 342, 349, 56 A. 632 (1904); see also *State* v. *Williamson*, supra, 42 Conn. 263–64 ("it has become a rule of practice, it cannot correctly be called a rule of law, for the court to caution the jury as to the weight of [uncorroborated accomplice testimony]"); *State* v. *Wolcott*, supra, 21 Conn. 282 ("[c]ourts frequently do and ought to advise caution in reposing confidence in the naked testimony of an accomplice; but this is rather in the exercise of a proper judicial discretion, than because the law demands it"). Because the law does not require that an accomplice's testimony be corroborated for the jury to accept it, the Supreme Court has held that the accused is not entitled to a charge that an accomplice's testimony should be corroborated. *State* v. *Heno*, 119 Conn. 29, 33, 174 A. 181 (1934). "[T]he decision [rests with the jury] as to whether corroboration [for accomplice testimony] was necessary and the extent to which it was necessary." *State* v. *Leopold*, 110 Conn. 55, 64, 147 A. 118 (1929). "The degree of credit which is due to an accomplice, is a matter exclusively for the jury to say." *State* v. *Wolcott*, supra, 282.

In the present case, the court's instruction cautioned the jury to consider an accomplice's character and interests when weighing his testimony and to look at the testimony with particular care and careful scrutiny. The instruction noted that "[t]here are many offenses that are of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime" and that the jury should consider this testimony in light of all other evidence. The court also provided the jury with a general witness instruction, which similarly instructed the jury to weigh a witness' testimony in light of his interest in the case and all the other evidence.[6] Although the court did not use the word "corroboration," the court instructed the jury to consider other evidence when weighing all witnesses', as well as an accomplice's, testimony. Because the law does not require that an accomplice's testimony be corroborated for the jury to accept it and because

the law does not require the court to instruct the jury that it is unsafe to rely on uncorroborated accomplice testimony, there is no patent and obvious error that requires reversal under the plain error doctrine.

### III

Finally, the defendant claims that the court improperly admitted McDowell's statement to the police as a prior inconsistent statement. On appeal, the defendant argues that McDowell's statement to the police did not satisfy the personal knowledge requirement of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); see also Conn. Code Evid. § 8-5 (1). The state argues that, at trial, the defendant did not object to the statement's admission on this ground and, in the alternative, that McDowell possessed the requisite personal knowledge. Assuming that the defendant preserved this claim, we agree with the state that the statement itself demonstrates that McDowell had personal knowledge of the facts in the statement.

The following additional facts and procedural history are relevant to this claim. On May 30, 2013, the police questioned McDowell about the previous day's CVS robbery. He provided a signed written statement to the police whereby he indicated the following: "Yesterday when I was at my house, I saw Kenny [Millege] give [Daniels], [the defendant], and [a third individual] the car I was stopped in today by the police at West Farms Mall. I saw him giving them the car at about 4:30 to 5:00 pm." At trial, the state called McDowell as a witness. When McDowell insisted that he had not seen Millege give them the car but, rather, that Millege had told him who he gave the car to, and that he did not remember everything he had said to the police, the assistant state's attorney sought to offer McDowell's May 30 statement as a prior inconsistent statement under *Whelan*. Defense counsel objected to the admission of the statement because it "totally lack[ed] the indicia of reliability needed to come in under [*Whelan*]" because McDowell had been falling asleep and "high on heroin when [he] gave the statement." The court initially sustained the objection because of the statement's inherent unreliability.

At the next trial day, the state asked the court to reconsider its ruling, arguing that under *State* v. *Hersey*, 78 Conn. App. 141, 151, 826 A.2d 1183 (2003), the statement's reliability "goes to the weight of the evidence and not to its admissibility . . . ." Defense counsel responded by distinguishing *Hersey* from the present case, noting that "[f]irst of all, Mr. McDowell at one point stated in his testimony that he was repeating not what he knew from his own statements, but from what Mr. Millege had told him . . . ." Nevertheless, the court reconsidered its decision from the previous day. After reviewing the case law and the statement itself, the

court concluded that it could not find that the statement was "so unreliable . . . that a jury should not be permitted to consider it for substantive purposes."

The defendant now argues that the court improperly admitted McDowell's statement because it did not satisfy *Whelan*'s personal knowledge requirement.[7] We disagree.

Before addressing the merits of the defendant's claim, we set forth the standard of review and relevant law. "The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the . . . discretion of the trial court. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 56, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

In *Whelan*, the court adopted a hearsay exception "allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." *State* v. *Whelan*, supra, 200 Conn. 753.[8] "In evaluating whether a declarant has personal knowledge of the facts contained within a prior inconsistent statement, we look to the statement itself. If the statement itself indicates that the basis of the information contained in that statement is the declarant's personal knowledge, that is sufficient to satisfy the criteria of personal knowledge established by *Whelan*. . . . Whether a witness repudiates a prior inconsistent statement has no bearing on the reliability of such statement." (Citation omitted; internal quotation marks omitted.) *State* v. *Juan V.*, 109 Conn. App. 431, 443–44, 951 A.2d 651, cert. denied, 289 Conn. 931, 958 A.2d 161 (2008). "The jury can . . . determine whether to believe the present testimony, the prior statement, or neither." (Internal quotation marks omitted.) *State* v. *Pierre*, supra, 277 Conn. 57. "Furthermore, [a]llowing a party to circumvent the exception to the hearsay rule established by *Whelan* merely by repudiating the foundation for his knowledge when that foundation is an element of the statement itself would eviscerate the *Whelan* exception, potentially leaving no statement admissible under the pertinent rule." (Internal quotation marks omitted.) *State* v. *Juan V.*, supra, 444.

In the present case, the statement itself demonstrates that McDowell had personal knowledge when he made the statement. See id., 443. McDowell's statement states that he "*saw* Kenny [Millege] give [Daniels], [the defendant], and [a third individual] the car . . . ." (Emphasis added.) McDowell then signed his statement, thereby

attesting to its truth and acknowledging that he understood that he could be subject to criminal penalties for making a false statement. Nevertheless, McDowell repudiated his statement at trial, indicating that he had not in fact seen Millege transfer the car but, rather, had been told by Millege about the transfer. Although the court only allowed a redacted version of the statement to be introduced into evidence, when determining whether it satisfied *Whelan*'s requirements, the court had the full statement before it, which includes details that further demonstrate that McDowell possessed the requisite personal knowledge. In drawing every reasonable presumption in favor of the court's ruling, we hold that the court did not abuse its discretion in determining that McDowell's statement itself demonstrated that McDowell possessed the requisite personal knowledge. See *State* v. *Pierre*, supra, 277 Conn. 56; see also *State* v. *Juan V.*, supra, 109 Conn. App. 443.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The jury also found the defendant guilty of the lesser included offenses of larceny in the fourth degree in violation of General Statutes § 53a-125 and conspiracy to commit larceny in the fourth degree in violation of General Statutes §§ 53a-48 and 53a-125. The trial court vacated the verdict as to these charges. See *State* v. *Polcano*, 308 Conn. 242, 248, 61 A.3d 1084 (2013).

[2] The defendant conceded, both in his appellate brief and at oral argument, that this court does not have the authority to overturn Supreme Court precedent, and, thus, he only "raises this claim to preserve it for future review by the Supreme Court."

[3] The state also argues that the defendant's claim lacks a factual premise because McDowell's statement to the police corroborated Daniels' accomplice testimony. Because this court is bound by *State* v. *Stebbins*, supra, 29 Conn. 463, we need not address whether Daniels' testimony was corroborated.

[4] When reviewing a preserved claim of error, "[t]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Stafford* v. *Roadway*, 312 Conn. 184, 189, 93 A.3d 1058 (2014). In essence, the state argues that the defendant has not demonstrated that the court committed error, let alone plain error.

[5] The state reminded the jury, in its closing argument, that "in your role as a juror you have to assess the credibility of the witnesses who have come in here. . . . Now there was only one person who identified [the defendant] as the other participant, but I would submit to you that the other evidence here are those photographs. . . . Mr. Daniels identified [the defendant] for you. . . . Now I'm sure defense counsel will tell you, well, you shouldn't believe Mr. Daniels. He's a convicted felon and, you know what, he took a plea agreement here. He helped himself. He has nobody else to corroborate what he says. Only what he's telling you. But, again, those photographs corroborate what Mr. Daniels told you. The clerks who work at CVS corroborate what Mr. Daniels told you." Defense counsel's closing argument focused primarily on "the ways . . . that . . . Daniels lied," pointing to his prior convictions and plea agreement as reasons not to credit his testimony. Although defense counsel noted that the two CVS employees did not identify the defendant as the other participant in the robbery, he did not directly argue that Daniels' testimony lacked corroboration.

[6] The state notes, in its brief to this court, that both the specific accomplice testimony instruction and general witness instruction given were nearly

identical to Connecticut's model jury instructions. See Connecticut Judicial Branch Criminal Jury Instructions § 2.5-2 (Revised to December 1, 2007), available at http://www.jud.ct.gov/ji/criminal/Criminal.pdf (last visited December 5, 2017). As we have stated in the context of claims of instructional error that were preserved or raised under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), "[w]hile not dispositive of the adequacy of the [jury] instruction, an instruction's uniformity with the model instructions is a relevant and persuasive factor in our analysis." (Internal quotation marks omitted.) *State* v. *Leandry*, 161 Conn. App. 379, 396–97, 127 A.3d 1115, cert. denied, 320 Conn. 912, 128 A.3d 955 (2015).

[7] The defendant also argued that the statement constituted hearsay within hearsay but, at oral argument before this court, conceded that the statement could only be said to contain hearsay by virtue of McDowell's inconsistent testimony at trial. As the defendant concedes, for the *Whelan* statement to contain hearsay, the court would have to credit McDowell's trial testimony that his statement was based on what Millege had told him and not based on what he had seen as stated in his statement. See *State* v. *Pierre*, 277 Conn. 42, 64–65, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

[8] "This rule also has been codified in § 8-5 (1) of the Connecticut Code of Evidence, which incorporates all of the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 642, 945 A.2d 449 (2008).