## STATE OF CONNECTICUT
### vs.
### T. FRANK HAYES, ET AL.

Superior Court      New Haven County      File #6026
(At Waterbury)

MEMORANDUM FILED JUNE 30, 1938.

Hugh M. Alcorn, Hugh M. Alcorn, Jr., and Harold E. Mitchell, all of Hartford, for the State.

James D. C. Murray, New York; Patrick Healey, Waterbury, for T. Frank Hayes. Josiah H. Peck, Hartford; Frederick H. Waterhouse, Hartford, for Daniel J. Leary. John H. Cassidy, Waterbury, for Carl D. Olson. Thomas F. McDonough, New Britain, for Thomas P. Kelly. Patrick Healey, Waterbury, for Thomas J. Fleming. William J. Wholean, Hartford, for Martin J. Dunn. John H. Cassidy, Waterbury, for Charles S. O'Connor. Patrick Healey, Waterbury, for John H. Crary. Patrick Healey, Waterbury, for Thomas A. Shanahan. Patrick Healey, Waterbury, for Michael F. Slavin. Sidney S. Cassel, Waterbury, for Philip Coppeto. Sidney S. Cassel, Waterbury, for Ralph Coppeto. John F. McDonough, Waterbury, for Timothy J. Horgan. John H. Cassidy, Waterbury, for Frank A. Santalucia, alias Frank Burns. John H. Cassidy, Waterbury, for James P. Healey. Patrick Healey, Waterbury, for Henry Minor. William F. Hadden, New Haven; Daniel Pouzzner, New Haven, for Harry E. Mackenzie. No appearance for Charles E. Williamson. William F. Hadden, New Haven, for Edward G. Levy. George W. Crawford and Nathan Shepatin, New Haven, for Simon J. Alderman. John H. Cassidy, Waterbury; Vincent P. Pessolano, for Donato Pietraroria, alias Dan Peters. Harold C. Ashworth, Waterbury, for John G. Purdie, alias John Conway. Patrick Healey, Waterbury, for John S. Johnston. Benjamin Slade, New Haven, for George H. Kingsley, William R. Murray and John B. Meaney.

INGLIS, J.   An analysis of the pleas in abatement shows that taken all together they set up seven grounds or groups of grounds upon which it is claimed that the action should abate. The various demurrers put in issue the questions as to whether these various grounds, assuming for the purposes of the demurrers that the facts properly alleged in support of them are true, are sufficient in law to cause the abatement of the action. The various grounds or groups of grounds alleged will be discussed briefly in their order.

1.   The first group of grounds alleged is in effect, that the action must abate because Mr. Alcorn who as special state's attorney signed the information upon which the bench warrant issued was not authorized to do so because (a) he had not been duly appointed as such special state's attorney, (b) he had failed to take an oath of office and (c) he had failed to file a bond.

Upon argument it was agreed that in passing upon these questions the Court should take judicial notice of and take into consideration all that appeared in the records of the Court relating to the matter.

(a)   The question as to whether Mr. Alcorn had been duly appointed as special state's attorney to conduct these proceedings on behalf of the State has been passed upon in the quo warranto proceedings in this Court, No. 12786, *State ex rel. Kelly vs. Alcorn,* 6 Conn. Sup. 210.   Reference is made to the memorandum on demurrer to the plea in that case for the reasoning which leads to the conclusion that he was duly appointed as special state's attorney.

(b)   The records of the Court contain the certificate of the Clerk to the effect that on March 1, 1938 Hugh M. Alcorn appeared before the Clerk "and took *the* oath. . . . as special attorney . . . to conduct investigation of municipal affairs in Waterbury."   The necessary *intendment* of that record is that upon that day Mr. Alcorn took an oath to faithfully perform the duties of the office of special attorney to which he had been appointed by the Court on February 4, 1938.   That is the only office of special attorney to which he had been appointed and moreover the phrase "to conduct investigation of municipal affairs in Waterbury" adequately ties the taking of the oath into that appointment.   Incidentally, to so make

it plain that the oath of office which he was taking was the oath to perform the duties under that particular appointment, is the only effect of that phrase. To say, as is contended by some of the defendants, that the effect of the phrase is to limit the obligation of the oath to the conduct of a preliminary investigation is splitting hairs. The record is that Mr. Alcorn took "the oath as special attorney." And if his appointment was to act as special state's attorney in the whole matter, as it appears clearly from a reading of the application of Mr. Lewis that a special attorney be appointed to conduct an investigation and to institute and conduct prosecutions and the order granting the application and appointing Mr. Alcorn as such special attorney it was, then it follows that the oath was to do all those things.

Moreover, even though the oath had been, as the record discloses it was not, simply to conduct an investigation of municipal affairs in Waterbury, that would not be an oath merely to conduct a preliminary investigation. An investigation in the ordinary sense of the word is not complete until facts are established by proof and in such a situation as is involved here, if the preliminary investigation indicates that there is probable ground to believe that certain men are guilty of crime the investigation is not complete until those men are presented in Court and the investigation by way of the taking of evidence in Court leads to a final conclusion as to the guilt or innocence of those men. The investigation goes on until the truth is established. An oath to conduct an investigation is an oath to carry the matter through to the point where the true facts are established as true. Accordingly if Mr. Alcorn's oath had been nothing more than to conduct an investigation of municipal affairs in Waterbury, still, under that oath, he was bound to do everything necessary to procure a determination of the facts by a Court including the filing of such informations as might become necessary incidents of that procedure.

It is therefore concluded that the contention that the special state's attorney failed to take an oath of office is contradicted by the records of the Court and offers no ground for abatement of the action.

(c) There is no provision of law which requires a special state's attorney to file a bond. Accordingly the failure of the special state's attorney in this case to file a bond is not ground for abatement.

2. The second group of grounds for abatement are those which allege claimed irregularities in the selection and proceedings of the grand jury which investigated the municipal affairs of Waterbury. The law relating to these grounds respectively will be discussed separately under letters (a) to (h) inclusive.

(a) The first ground is that the grand jury was summoned upon the request of a special state's attorney who was appointed without authority of law (Cf. paragraph 13 of each of the pleas in abatement of Philip Coppeto and Ralph C. Coppeto). The conclusion, above arrived at, that Mr. Alcorn was duly appointed as special state's attorney disposes of this ground.

(b) Another ground, set up in most of the pleas in abatement, is that the grand jury was not selected by the sheriff. What is apparently intended to be an allegation of this ground is set up as paragraph A6 of the plea in abatement of Kingsley, et al. In that paragraph it is alleged: These defendants are informed and believe that the members of the alleged grand jury . . . were not selected by the Court or in a manner prescribed by law. It is to be noted that this is not an allegation of a claimed fact that the grand jury was not selected by the Court but an allegation of the information and belief of the pleader on the subject. It is therefore improper pleading and should be ignored. Inasmuch as the actual fact is that the members of the grand jury were selected by the Court upon information obtained from the special state's attorney, the sheriff and from at least one other source, no injustice will be done by leaving this irregular pleading out of consideration and deciding the question on the broad allegation set up in most of the pleas to the effect that the grand jury was not selected by the sheriff.

The statute (Gen. Stat. [1930] §6430) does not expressly provide how the members of the grand jury shall be selected. It definitely does not specify that the sheriff shall make the selection. It does specify that "the *superior court* may, when necessary, order a grand jury . . . to be summoned." Although it is true that for the most part in the past the Court ordering a grand jury in has been willing to leave the choice of the personnel of that grand jury to the sheriff, after all the grand jury is an arm of the Court and it would be strange indeed if the Court could not control its make-up. When the sheriff selects a grand jury, he does so as an officer of the

Court. He gets his authority only from the order of the Court. And what the Court may do through its officer it certainly may do itself. It is obviously the intent of the statute that the Court itself shall have the responsibility for the selection of the members of the grand jury and, therefore, it cannot be a ground for abatement of this action that the grand jury was selected by the Court rather than by the sheriff.

(c) Another claimed ground for abatement alleged in some of the pleas is that the members of the grand jury were not selected from the jury list. The answer to that is that grand jurors in this State never have been selected from the jury list, which is made up only for purposes of drawing petit juries therefrom, and there is no possible reason why they should be.

(d) It is further alleged that some members of the grand jury were not freeholders. The statute (Gen. Stat. [1930] §6430) establishes the qualifications for members of the grand jury. The only qualification is that the juror be an elector. Accordingly it is not required that he be a freeholder.

(e) Coming now to the proceedings in the grand jury room, all of the pleas in abatement assign as one ground for abatement, in one form or another, that the special state's attorney, his two assistants and a stenographer were present at the sessions of the grand jury at which evidence was taken, thereby violating the secrecy of the grand jury proceedings to the prejudice of the accused. It is not alleged that any of those persons were present during the deliberations and voting of the grand jury.

It is true that the directions to the grand jury approved by the nine judges of the Supreme Court of Errors in November, 1815, and reported in Luno's Case, 1 Conn. 428, contained the statement "You will admit no counsel on the part of the state." It has been held, however, that the rules in Luno's case are merely directory and are not necessarily controlling. *State vs. Hamlin,* 47 Conn. 95, 104. Moreover, it is to be borne in mind that they were laid down as applying to such grand juries as would be called upon to decide whether a true bill should be returned charging a crime punishable by death or life imprisonment. The Constitution requires action by a grand jury before a man can be put in such extreme jeopardy. The constitutional provision is for the protection of accused or suspected persons and, that being the purpose, with respect to grand juries acting per force of the constitutional provision,

it is apparent that it would further that purpose to keep the grand jury free from the influence of the attorney for the State. Where, as in the present case, the grand jury is not one which is required by the Constitution, its purpose is not for the protection of persons who might be unjustly suspected, but primarily for the ferreting out and investigation of crimes, and the same reason for the exclusion of the attorney for the State does not exist.

At common law the prosecutor was usually present while a grand jury was taking testimony and in jurisdictions other than Connecticut it is now common practice for the attorney for the State and his assistants to be present and examine witnesses. 28 C.J. 802. In many investigations, and apparently the present case was one, it is essential to the efficient performance of the grand jury's function that they have the assistance of the attorney for the State in bringing out the testimony of the various witnesses who appear. It is not to be presumed that a state's attorney in this State will take unfair advantage of his position in the grand jury room. The danger of that is very slight and the consideration that it may exist is overwhelmed by the consideration that the state's attorney's presence is practically necessary for the efficient working of the grand jury. *State vs. Lung,* 106 Conn. 701.

So far as secrecy is concerned, it is essential that the results of a grand jury investigation such as the present one must be reported to the prosecutor anyway...*McCarthy vs. Clancy,* 110 Conn. 482, 507. Accordingly, there can be no harm in the prosecutor and his assistants hearing the evidence as it goes in before the grand jury.

In the same way with reference to the stenographer. His presence is necessary if the investigation carried on by the grand jury is to be efficiently done and the secrecy of the proceedings so far as he is concerned is protected and assured by swearing him to secrecy.

It is therefore concluded that, under the law, the special state's attorney and his assistants and the stenographer were properly present at the sessions of the grand jury and that their presence offers no valid ground for the abatement of the action.

(f) Still another ground assigned in most of the pleas in abatement is that the oath of secrecy was administered to the

witnesses who testified before the grand jury. The argument is that this violated the constitutional right of such of the accused as testified before the grand jury to confer with counsel in the preparation of their defense in that it subjected them to a penalty in contempt proceedings if they disclosed to their counsel what they had testified to in the grand jury room.

It is enough to say as regards this contention that it is not uncommon procedure to exact from witnesses before a grand jury the oath of secrecy. 2 C.J. 813. Irrespective of such an oath, the law imposes on such a witness the obligation of secrecy generally and a violation of that obligation makes the witness subject to contempt proceedings. Accordingly, the taking of the oath of secrecy does not in any way alter the position of the witness before the law. It serves simply to impress upon the witness the fact that under the law he is bound to secrecy.

The law recognizes that there are certain exceptions to the rule of secrecy. *State vs. Fasset,* 16 Conn. 458, 471; *State vs. Coffee,* 58 id. 399. If by reason of constitutional law or otherwise as a matter of law an accused person has the right to disclose to his counsel what he testified to before a grand jury, then that is one of the exceptions to the rule of secrecy. All that a witness has done in taking the oath of secrecy is to obligate himself to comply with the law of secrecy. If under that law he has the right to confide in his counsel to the extent of disclosing what he testified to, then he still has that right under his oath of secrecy.

(g) It is alleged in most of the pleas that the defendants were not accorded before the grand jury the rights of an accused to be present, to be faced with the witnesses against them and cross-examine such witnesses and to be represented by counsel. That they had any such rights in a grand jury proceedings is indeed a novel proposition. A grand jury hearing is ex parte on behalf of the State. In spite of the rules promulgated in *Lung's Case, supra,* it has been held that the accused has no absolute right ever to be present at the taking of testimony before a grand jury. *State vs. Wolcott,* 21 Conn. 272, 279. The practice has never been to permit counsel for the accused to be present.

(h) The main ground of the demurrer addressed to all of this second group of claimed grounds for abatement namely that the proceedings and actions of the grand jury are imma-

terial in connection with this action has not yet been discussed. It is a sufficient reason upon which to dispose of all of the grounds referred to in paragraphs (a) to (g) inclusive irrespective of the reasons already stated. It is particularly applicable to the sole remaining alleged ground for abatement of this group.

That ground for abatement is that, as alleged, these accused were compelled by threats and unfair methods to give evidence against themselves before the grand jury, and were not warned against giving incriminating evidence.

We are not concerned here with the validity of an indictment. The bench warrant to which these pleas in abatement are directed was issued on the strength of an information filed by the special state's attorney under his oath of office. This is not a case in which the Constitution or the law requires an indictment by a grand jury as a prerequisite to a trial. Granting, as is claimed, that the information of the special attorney is based exclusively on knowledge obtained by him through the grand jury proceedings and that a part of that was unlawfully obtained, nevertheless the fact remains that the information was filed upon his oath of office and the proceedings is now pending on that information and not upon any findings of the grand jury based upon improper evidence which have led to an indictment.

If a police officer investigating a crime had improperly coerced an accused into a confession and reported that to the state's attorney, and thereupon the state's attorney had filed an information against that accused, no one would seriously contend that, for that reason, the information should be quashed or the action abated. If a state's attorney, himself, should procure such a confession improperly, that would not be a ground for quashing the information or abating the action. The state's attorney is an officer of the Court and just as much an arm of the Court as is the grand jury.

Where an indictment is neither required nor used as the basis for a prosecution, an accused is not injured in the eyes of the law by the improper procuring of evidence against him until that evidence is admitted against him on the trial of the case. And anything which the grand jury does or fails to do ought not to abate an action which in no sense depends for its existence on any conclusion reached by that grand jury.

3. The third of the main grounds for abatement is vari-

ously stated but amounts to the claim that inasmuch as the grand jury failed to return an indictment the state's attorney could not proceed by way of information because that would constitute double jeopardy. It is indeed novel to suggest that the proceedings before a grand jury constitute jeopardy. The most that a grand jury may do is to return an indictment. There is no danger that a grand jury will find a man guilty. That is not within its province. Therefore no one is placed in jeopardy in a grand jury proceeding. It is fundamental that the failure of one grand jury to indict does not prevent the same matter being again presented to another grand jury and if one grand jury proceeding constituted jeopardy that would not be possible. The conclusion arrived at in 2 (g) above, that is proceeding in no way depends upon any conclusion arrived at by the grand jury, disposes of this ground for abatement.

4. The fourth ground for abatement relied upon is the broad claim that this proceeding was instituted merely upon the information of the special state's attorney without any preliminary hearing. The contention is that the statute (Gen. Stat. [1930] §6446) which authorizes the state's attorney to file an original information in the Superior Court without a preliminary hearing is unconstitutional because not due process of law.

It is of course fundamental that this Court ought not to declare a statute unconstitutional unless it is clearly so. It has been held by the Supreme Court of the United States that the institution of a criminal proceeding by the information of a state's attorney, at least in cases where provision is made for a preliminary hearing, is due process of law. *Hurtado vs. California*, 110 U. S. 516; 28 L. Ed. 232. And the fact that in that case a preliminary hearing was provided was not essential to the reasoning of the opinion. The one thing which is essential, apparently, is that no man shall be arbitrarily and without any cause charged with crime.

Under our procedure a state's attorney takes an oath of office. Under that oath he is precluded from acting arbitrarily. When, therefore, upon that oath of office he makes information against an accused it means that he is not acting arbitrarily but after investigation and on reasonable ground. The investigation by the state's attorney and the determination by him that there is reasonable ground to proceed takes the place of a preliminary hearing by a magistrate and suf-

ficiently fulfills all of the requirements of due process of law.

So far as our own State Constitution is concerned, the practice of filing original informations in the trial courts goes back as far as 1730 at least. *State vs. Keena,* 64 Conn. 212, 215. It was in vogue, therefore, at the adoption of the Constitution in 1818. The only provision of the Constitution bearing directly on the subject is that provision which requires an indictment of a grand jury in cases where the punishment may be death or life imprisonment. Having provided that restriction on the power of the state's attorney to file original informations and no other, it is to be presumed that the Constitution does not intend to make any other restriction and that therefore the power of the state's attorneys to file original informations in all other cases is recognized by the Constitution.

5. The fifth main ground of the various pleas in abatement is that the character of the report of the grand jury and the publicity which it has had prevents a fair trial. Assuming as we must for the purposes of the demurrer that this is true, nevertheless it is not a proper ground for abatement. A plea in abatement goes simply to the question as to whether the writ was lawfully issued, served and returned. Simply that it will be impossible to get an unbiased jury to try a case has nothing to do with the question as to whether the information charging the crime is valid or whether the warrant has been properly issued or served.

6. Sixth, the pleas in abatement of Ralph Coppeto and Philip Coppeto assign as a ground that the information does not state a cause of action. This is obviously a ground for demurrer and not a ground for a plea in abatement.

7. Seventh, the plea in abatement of T. Frank Hayes attempts to raise the defense of the statute of limitations. This likewise is not a proper ground for abatement.

The various demurrers attack all of the paragraphs in all of the pleas in abatement. For the reasons above stated the demurrers to the various pleas in abatement are sustained and all of the pleas in abatement are overruled.